UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TERRY L. SNYDER, II.

                        Plaintiff,              10-CV-6241T

            v.                                  **DECISION
                                                and ORDER**

MICHAEL ASTRUE,
Commissioner of Social Security

                        Defendant.
_____

### INTRODUCTION

Plaintiff Terry L. Snyder ("Plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), denying Plaintiff's application for benefits, did not give proper weight to Plaintiff's treating physician's opinions as to his disability.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)"), on the grounds that the decision of the ALJ was supported by substantial evidence in the record and that Plaintiff was not disabled during the relevant period under review. Plaintiff opposes the Commissioner's motion, and, appearing pro se, cross-moves on a motion for reversal of the ALJ's decision on the ground's that proper weight was not given to

Plaintiff's treating physician's opinions regarding his disability. The court finds that the decision of the Commissioner, that the Plaintiff was not disabled within the meaning of the Social Security Act, is supported by substantial evidence in the record and is in accordance with applicable legal standards. Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## BACKGROUND

The Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act on July 5, 2007, claiming a disability since March 13, 2005. (Transcript of Administrative Proceedings at 12, 99-101, 104-07) (hereinafter "Tr."). The application was initially denied on December 27, 2007. (Tr. at 64-5). Plaintiff filed a timely request for a hearing. (Tr. at 68-74).

Plaintiff then appeared, with counsel, and testified at the hearing on April 7, 2009 in Rochester, NY before ALJ John P. Costello. (Tr. at 23-4). Peter A. Manzi, a vocational expert, also testified at the hearing. (Tr. at 23, 52-5). In a decision dated May 19, 2009, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act (Tr. at 9-22). The Appeals Council denied further review, and the ALJ's decision became the final decision of the Commissioner on March 9, 2010. (Tr. at 1-3). Plaintiff then filed this action.

**DISCUSSION**

I.   **Jurisdiction and Scope of Review**

42 U.S.C. § 405 (g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.  When considering such claims, this section directs the Court to accept the findings of fact made by the Commissioner, provided that these findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) limits the Court's scope of review to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1982) (finding that a reviewing Court does not try a benefits case *de novo*).  The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983)(citation omitted).

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c), asserting that his decision was reasonable and was supported by substantial evidence in the record.  Rule 12(c) permits judgment on the pleadings where the material facts are undisputed and where judgement on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C.

<u>Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). In this case, this Court finds that there is sufficient evidence in the record for the Commissioner to find that the Plaintiff was not disabled. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied.

## II. **The Commissioner's decision to deny the Plaintiff Disability Insurance Benefits is supported by substantial evidence**.

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. In his decision, the ALJ adhered to the following five step sequential analysis required for evaluating Social Security Disability benefits claims:

(1) whether the claimant is performing substantial gainful work activity;

(2) if not, whether the claimant has a severe impairment that significantly limits his ability to perform basic work activity;

(3) whether the claimant's impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; if so, claimant is considered disabled;

(4) if not, the ALJ determines whether the impairment prevents the claimant from performing past relevant work; if the claimant has the residual functional capacity ("RFC") to do his past work, he is not disabled;

(5) even if the claimant's impairment(s) prevent him from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual

functional capacity and vocational factors, he is not disabled.

See 20 C.F.R. §§404.1520 (a) (i)-(iv) and 416.920(a)(4)(i)-(iv).

In this case, the ALJ found that (1) the Plaintiff has not engaged in substantial gainful activity since March 13, 2005; (2) the Plaintiff has the "severe" impairment of cervical spine disc herniations status post surgery; (3) the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff is unable to perform any past relevant work; and (5) the Plaintiff has the residual functioning capacity to perform less than the full range of light work, consisting of: lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, which may require a good deal of walking or standing, or sitting more of the time with some pushing and pulling of arm or leg controls. Plaintiff can stand for a maximum of four hours, sit for a maximum of four hours, should be able to change position every one-half hour, and he should engage in no over-head lifting. (Tr. at 14-7, 20).

The ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, such as cashier or collator operator. (Tr. at 20-1). Therefore, the ALJ found that the Plaintiff was not

disabled within the meaning of the Social Security Act.   (Tr. at 21).

Based on the entire record, including the medical evidence, this Court finds that there was substantial evidence for the ALJ to conclude that the Plaintiff was not disabled within the meaning of the Social Security Act.

## A.   **The ALJ's Decision is supported by the substantial medical evidence in the record, including the evidence from Plaintiff's treating physicians.**

Plaintiff argues that the ALJ did not give proper weight to the opinions of his treating physicians, accepting instead the opinion of "one Dr. who has just seen me once and works for the insurance company...."[1]    (Plaintiff's written statement). Plaintiff's treating physicians, Drs. Ronald Epstein and Stephen Lurie, and Ms. Carol Thiel, FNP-C, asserted that Plaintiff was "totally disabled."  (Tr. at 204-06, 209, 213, 215).  Generally, a treating physician's opinion is given controlling weight when it is well-supported by medical evidence and is not inconsistent with other substantial evidence in the record.    20 C.F.R. §416.927(d)(2), §416.1527 (d)(2).  The following factors must be considered when determining the weight given to a physician's medical opinion: (1) was there a treatment relationship; (2) what

---

[1]Plaintiff submitted a one sentence written statement as stated above. He was represented by counsel at his hearing before ALJ Costello, but was not represented in opposing the Commissioner's motion for judgment on the pleadings. Accordingly, having appeared pro se, this Court will set forth an extensive review of the record.

was the length, and frequency of the treatment relationship; (3) is the treating physician's opinion supported by clinical and laboratory findings; (4) is the treating physician's opinion consistent with the record as a whole; (5) is the treating physician specialized; and (6) other factors that support or contradict the medical opinion of the treating physician. <u>See</u> 20 C.F.R. §416.927 (d)(3)-(6), §416.1527(d)(3)-(6).   While the ALJ must adopt the treating physician's opinion if it is "well supported by medical findings and not inconsistent with other substantial findings," the decision of whether or not the Plaintiff is disabled is reserved to the Commissioner. <u>Rosa v. Callahan</u>, 168 F.3d 72, 78-79 (2d Cir. 1998); 20 C.F.R. §416.927(e), §416.1527(e).

Here, the ALJ found that the treating notes of Drs. Epstein and Lurie did not support their assertions and instead supported the ALJ's RFC assessment.   (Tr. at 19).   Therefore, the ALJ properly decided that the opinion of Plaintiff's treating physicians should not be given controlling weight under the treating physician rule.   (Tr. at 19-20).   This Court finds that the ALJ properly took into consideration the reports of Drs. Epstein and Lurie, the reports of Plaintiff's other treating physicians, as well as the reports of examining and consulting physicians(Tr. at 18-20) in compliance with the Social Security Regulations. <u>See</u> 20 C.F.R. §416.927 (d), §416.1527(d); SSR 96-2p, 96-5p.

Plaintiff was involved in a car accident on October 13, 2005. (Tr. at 159). A lumbar spine x-ray from October 17, 2005 revealed an L1 lumbar spine compression fracture. (Tr. at 155). A December 2005 magnetic imaging study ("MRI") of plaintiff's lumbar spine revealed a "mild" compression fracture deformity involving L1, and "no significant" spinal stenosis or neural foraminal narrowing. (Tr. at 153). A December 2005 thoracic spine MRI also showed "mild" degenerative disc changes, "mild" spinal stenosis at T9-T10, but "no significant" neural foraminal narrowing and "no significant" spinal stenosis. (Tr. at 154).

Plaintiff saw Dr. Matthew Wilson, M.D. for a new patient visit at Highland Family Medicine on July 24, 2006. (Tr. at 174). He complained of back pain, but the exam revealed full range of motion in Plaintiff's back, 4+/5 muscle strength in his lower extremities, and intact sensation throughout. (Tr. at 174).

Dr. Ronald Epstein, Plaintiff's primary care physician, began treating the Plaintiff in August of 2006. (Tr. at 171-72). Dr. Epstein's initial exam revealed pain on forward and sideward flexion of the neck with some tenderness in the neck and back, but full range of motion in flexion, extension, and twisting. (Tr. at 171). Strength, reflexes, and range of motion were normal in the lower extremities. Id. Plaintiff reported meeting with a chiropractor three times per week and noted significant improvement. Id. Dr. Epstein recommended continued chiropractic

care with massage and jacuzzi, fast long walks on level ground, and weight loss.  Id.

An August 2006 brain MRI revealed sinus disease, but no intracerebral or vascular abnormalities. (Tr. 166-7, 171, 180, 188).  Plaintiff  presented with no abnormalities in the lumbar spine and no neurological abnormalities during a September 2006 follow-up with Dr. Epstein. (Tr. at 164-66).

An October 10, 2006 cervical spine x-ray showed "mild disc space narrowing" and possible "minimal" retrolisthesis.  (Tr. at 156).  An October 10, 2006 cervical MRI revealed bilateral posterior annular fissures at C3-4; small center posterior disc herniation at C4-5; diffuse paracentral to central small disc herniation at C5-6; and moderate to large posterior disc herniation at C6-7.  (Tr. at 157-58).  An October 2006 diskogram also showed two herniated discs and one torn disc.  (Tr. at 163; see Tr. 159-61).

Plaintiff reported no active problems during an October 23, 2006 visit with Dr. Epstein. (Tr. at 163).  A November 14, 2006 exam showed "minimal" local tenderness and "normal" reflexes and motor strength.  (Tr. at 162).

On November 21, 2006, Plaintiff underwent anterior diskectomies with decompression of spinal canal and neural foramina, vertebrectomies, cervical fusion, and plate fixation. (Tr. at 177-81).  Dr. Epstein noted good results post surgery with reduction of pain, greater range of motion, improved gait, and no

radiating pain to Plaintiff's arms and legs.   (Tr. at 221).  In August 2007, additional surgery was required to repair a vocal cord damaged during the November 21, 2006 procedure.  (Tr. 186-87, 213). Afterward, Dr. Epstein confirmed that this surgery was also successful.  (Tr. at 268).

The Plaintiff continued to see Dr. Epstein, along with Drs. Stephen Lurie, Richard Botelho, Elizabeth Naumburg, and family nurse practitioner Carol Thiel in 2007. (Tr. at 203-21).  In March 2007, Dr. Naumburg noted that Plaintiff walked "easily" without limp or restriction. (Tr. at 218).  Dr. Naumburg also reported "excellent" range of motion in Plaintiff's back, "slightly limited" range of motion in Plaintiff's neck, no evident spasm in neck or back, and normal reflexes. Id.  Dr. Naumburg noted that Plaintiff's physical exam was "not consistent" with Plaintiff's reports of pain.  Id.

On April 17, 2007, Plaintiff visited his primary physician to discuss possible job choices, which included driving "perhaps people to medical appointment[s] or lab results to and from places." (Tr. at 216). During an April 19, 2007 appointment, Dr. Epstein stated that Plaintiff had a "total disability" but noted that Plaintiff had not reached maximum medical improvement, was capable of working, and that Plaintiff's work capacity was under evaluation at work rehab.  (Tr. at 215).  The exam showed tenderness in the posterior neck and pain with active motion, but normal strength in Plaintiff's extremities.  Id.

In May 2007, Ms. Thiel FNP-C assessed that Plaintiff was disabled "from many activities/work due to chronic pain, neck fusion, forgetfulness." (Tr. at 213). Findings from the physical exam contained only Plaintiff's vital signs and weight.  (Tr. at 213).  During other visits in 2007, Drs. Epstein and Lurie further asserted that Plaintiff was "totally disabled." (Tr. at 204-06, 209).

In October of 2007, Steven Ess, DC, Plaintiff's treating chiropractor, assessed that Plaintiff had a "permanent partial disability," and stated that Plaintiff was capable of limited work-related physical activities such that Plaintiff could occasionally lift or carry up to ten pounds, stand or walk up to six hours per day, and sit up to six hours.  (Tr. at 196, 198).  Dr. Ess noted limitations on Plaintiff's upper extremities (no reaching overhead), but noted no other limitations.  (Tr. at 199).

During an October 2007 visit with Dr. Lurie, Plaintiff reported back and neck pain, as well as pain over the right iliac crest, but stated the pain did not interfere with his daily activities.  (Tr. at 203).  Plaintiff reported that he was able to help restore an antique car for about an hour each day, and participate in his son's school activities.  Id.   Though Plaintiff's general and musculoskeletal exams were found "normal," Dr. Lurie stated that Plaintiff was "totally disabled" and incapable of doing any type of work. Id.

In November 2007, Dr. George Sirotenko conducted a consulting exam on behalf of the Commissioner. (Tr. 230-4). Dr. Sirotenko noted that Plaintiff was followed by an orthopedist as needed and monitored by his primary care physician, but that Plaintiff did not utilize an assistive or supportive device, and did not attend a pain clinic. (Tr. at 230). Dr. Sirotenko also noted that Plaintiff did not require assistance getting on or off the examination table, and that he was able to rise from the chair without difficulty. (Tr. at 231). Plaintiff reported that he was able to do light cooking, light laundry, and that he could bathe and dress himself. Id. Plaintiff also noted that he enjoyed fishing. Id.

Dr. Sirotenko's exam showed reduced range of motion of the cervical and lumbar spine with parathoracic and paralumbar tenderness. (Tr. at 232). SLR test was negative, and Plaintiff had full range of motion in his upper and lower extremities bilaterally. Id. The exam also showed muscle strength of 4/5 in both Plaintiff's upper and lower extremities. Id. Hand and finger dexterity were intact with a grip strength of 4/5. (Tr. at 233).

Dr. Sirotenko diagnosed status post anterior cervical fusion with moderate limitations in range of motion noted, and probable musculoskeletal ligamentous mid-thoracic paralumbar back pain with mild limitations in range of motion. Id. He concluded that Plaintiff would be able to push, pull, and lift objects of a moderate degree of weight on an intermittent basis. Id.

Dr. Sirotenko also noted that Plaintiff should avoid lifting heavy objects over his head to prevent axial load and added that Plaintiff did not require the use of an assistive or supportive device. Id.

Plaintiff had lumbosacral spine and cervical spine x-rays taken on November 9, 2007. (Tr. at 235). The lumbosacral x-ray showed a "mild" deformity of the apophysis of the anterior superior aspect of L1, no significant narrowing of the disc spaces, and "tiny" anterior osteophytes in the lower thoracic spine and at L4. Id. The cervical spine x-ray revealed the anterior surgical fusion with hardware in "good position and alignment." Id.

Plaintiff continued treatment with his primary physician in 2008. (Tr. at 259-273). Plaintiff related being "bored" during a July 31, 2008 appointment with Dr. Epstein. (Tr. at 268). The physical exam revealed "slightly" tender paraspinous muscles in Plaintiff's neck with good range of motion. Id. Plaintiff had full range of motion in his back with some paraspinous lumbar tenderness, normal reflexes at the knees and ankles, and normal ankle dorsiflexion. Id.

An October 2008 exam showed minimal tenderness in the neck with reduced range of motion, and restricted flexion and extension. (Tr. at 265). A tender spot in Plaintiff's back was also noted around T10-11. Id. However, the exam also showed a negative SLR, normal gait and reflexes, no motor weakness, and no sensory changes. Id.

During a November 2008 exam, Plaintiff reported improvements in pain after visiting the gym the previous two weeks and doing sit-ups, ball exercises, and using the jacuzzi. (Tr. at 263). The exam showed no motor weakness or sensory changes. Id. During a December 1, 2008 exam, Plaintiff reported decreased activity since his last visit because he had his six year-old son. (Tr. at 261). On December 29, 2008, Plaintiff reported that he was trying to be more active but noted that he "overdid it" when he took his six year-old son sledding. Id.

Plaintiff was noted to be sitting comfortably during a January 2009 appointment. (Tr. at 258). Plaintiff complained of increased back pain during a February 2009 appointment, and noted that sleeping on a hard futon seemed to make it worse. (Tr. at 253). Plaintiff also stated that he sometimes overdid it when lifting his son. Id. Dr. Epstein recommended Plaintiff sleep in his bed instead of the futon, and encouraged increased exercise but not overdoing it. (Tr. at 254). Exam showed "weakly" positive SLR on the right side and tenderness over in the back, but no motor weakness or sensory changes. (Tr. at 253).

Dr. Sridevi Mukkamala conducted an independent medical evaluation on January 28, 2009. (Tr. at 245-52). Dr. Mukkamala's examination found no deformities of the cervical spine, but noted restricted range of motion. (Tr. at 250). Range of motion in both upper extremities was normal with no apparent weakness. Id. Sensation was intact and reflexes were normal. Id. Examination

of the lumbar spine showed no deformities and full range of motion. (Tr. at 251).  Both lower extremities showed no apparent weakness with sensation intact and normal reflexes.  Id.  The SLR test was negative bilaterally.  Id.  Patrick's test gave increased back pain but no radiation.  Id.  Dr. Mukkamala diagnosed failed cervical laminectomy syndrome with persistent neck pain, cervical degenerative disc disease, and lumbar sprain/strain.  He noted Plaintiff's proficiency at doing a home exercise program and recommended that Plaintiff continue his home exercise program at least twenty minutes every other day.  Id.  Dr. Mukkamala noted Plaintiff needed continued pain management as per his primary care physician, and did not recommend any massage therapy or future physical therapy.  Id.  He concluded that Plaintiff could work with a thirty pound weight bearing restriction with no frequent twisting and turning of the back or neck.  (Tr. at 252).

In March 2009, chiropractor Ess completed another medical assessment of Plaintiff's ability to do physical work-related activities. (Tr. 276-80).  He determined that Plaintiff could lift or carry up to ten pounds, stand or walk up to four hours, and sit a total of four hours in an eight hour work day.  (Tr. at 277-78). Dr. Ess also noted Plaintiff's postural limitations, and his impaired ability to reach, push or pull, and speak.  (Tr. at 278).

This Court finds that there was substantial medical evidence in the record for the ALJ to conclude that the Plaintiff was not disabled within the meaning of the Social Security Act, and that

the Plaintiff could perform a range of light work.   Light work is

defined as work that involves lifting no more than twenty pounds at

a time with frequent lifting or carrying of objects weighing up to

ten pounds, which may require a good deal of walking or standing,

or sitting more of the time with some pushing and pulling of arm or

leg controls.   20 C.F.R. §§404.1567(b), 416.967(b).

Here, the ALJ properly considered the repeated examinations of

Plaintiff's doctors, which showed reduced range of motion in the

Plaintiff's neck and back, but which also consistently showed no

sensory, motor, or reflex abnormalities, minimally diminished

muscle strength, and negative SLR tests.   (Tr. at 163-66, 171-2,

203, 207, 209, 211, 215, 253-4, 263, 265, 268).   Doctor Epstein's

notes, as well as Plaintiff's diagnostic tests support the finding

that Plaintiff is not totally disabled and can perform a range of

light work.   (Tr. at 215, 221, 264, 153-4, 156, 166-7, 235).   Thus,

because Plaintiff's treating physicians did not present relevant

evidence to support their assertions, the ALJ properly did not

provide controlling weight to those opinions and concluded that

Plaintiff could perform a range of light work.   (Tr. at 16-20).

**B.   <u>The ALJ properly concluded that the Plaintiff's subjective complaints were not entirely credible.</u>**

The ALJ found that the Plaintiff's allegations and testimony

concerning the intensity, persistence, and limiting effects of his

symptoms were not credible because the Plaintiff's symptoms were

out of proportion to the clinical findings, and Plaintiff's

testimony was "evasive and contradictory" and "rambling, evasive, and unbelievable."   (Tr. at 18).   This Court finds that the ALJ properly evaluated Plaintiff's testimony.

Plaintiff alleged that he was in constant pain and testified that he could not lift more than three pounds, stand or sit more than one-half hour to forty minutes, or walk more than one block before his hip "pops out." (Tr. at 32-3, 36-7, 49). However, Plaintiff also testified that he lifted his five year-old son, and took him sledding during the winter of 2008.  (Tr. at 39-40).  Yet, when Plaintiff was questioned about this activity at the hearing, he provided "evasive and contradictory" explanations entirely inconsistent with his alleged disability. (Tr. at 40-1; see also Tr. at 18).

Plaintiff also testified that he swam, and exercised at the gym.  (Tr. at 41-2).  He further stated that he walked to the park daily, often with his son.  (Tr. at 45-6, 50).  Plaintiff noted that he prepared his own meals, did his laundry, and that he was able to drive to the store for groceries.  (Tr. at 46).  He drove two to three times per week, usually around four or five miles. (Tr. at 47).   As of April 7, 2009 (the date of the hearing), Plaintiff acknowledged receiving four seatbelt tickets that year. (Tr. at 47-8).  Further, although Plaintiff previously related to Dr. Lurie in October 2007 that he regularly spent an hour daily restoring an antique car, Plaintiff denied this activity at the hearing and provided a "rambling, evasive, and unbelievable

explanation," claiming instead that he only ordered the parts online.  (Tr. at 42-4, 203; see also Tr. at 18).

During an August 2006 evaluation with Dr. Epstein, Plaintiff reported seeing a chiropractor three times per week with significant improvement.  (Tr. at 171).  During an October 2007 appointment, Plaintiff told Dr. Lurie that the pain did not interfere with his daily activities, and that he was able to participate in his son's school activities.  (Tr. at 203).  In November 2007, Plaintiff related to Dr. Sirotenko that he was able to do light cooking and laundry, and enjoyed fishing.  (Tr. at 231).  In November 2008, Plaintiff described pain "under reasonable control."  (Tr. at 259).

Further, although Plaintiff's car accident occurred in October 2005, he alleged a disability onset date of March 13, 2005, seven months before the accident.  (Tr. at 27).  There are no medical records prior to October 2005, and it is unclear why Plaintiff alleged March 13, 2005 as his disability onset date.  When questioned at the hearing, Plaintiff stated that nothing happened on March 13, 2005, and he remembered only that the October 2005 car accident triggered his medical problems. (Tr. at 27).  This Court finds that the Plaintiff's statements are contradictory to his claim, and were appropriately considered by the ALJ in the determination of disability.  (Tr. at 17-9).   20 C.F.R. §§404.1529(c)(3), 416.929(c)(3).

This Plaintiff's testimony was inconsistent with the clinical findings in the record and the Plaintiff's statements about his symptoms and daily activities were broad and vague at times.  This Court finds that the ALJ properly concluded that his testimony was not entirely credible.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.  Therefore, I grant the Commissioner's motion for judgment on the pleadings.  The Plaintiff's motion is denied and the complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          June 14, 2011